VAN FOSSEN ET AL., APPELLEES, *v.* BABCOCK & WILCOX COMPANY,
APPELLANT, ET AL.

[Cite as Van Fossen *v.* Babcock & Wilcox Co. (1988), 36 Ohio St. 3d 100.]

(No. 87-624—Decided April 13, 1988.)

*Scanlon & Gearinger Co., L.P.A.,* *James A. Rudgers* and *Terence E. Scanlon,* for appellees.

*Roetzel & Andress* and *George W. Rooney, Jr.,* for appellants.

*Vorys, Sater, Seymour & Pease,*

*Robin R. Obetz* and *Bruce L. Ingram,* urging reversal for *amicus curiae,* Ohio Self Insurers Assn.

HOLMES, J.   At the outset, we observe that this case presents two issues concerning actions by employees against their employers grounded upon an alleged intentional tort: first, whether the recently enacted provisions of R.C. 4121.80, placing various conditions upon all employer-employee intentional tort actions, may be applied retrospectively to cases awaiting decision in a court of appeals on the effective date of that statute; and second, whether summary judgment, in the event of the non-applicability of R.C. 4121.80, was erroneously granted in this case. We answer both queries in the negative, for reasons set forth hereinafter, and accordingly reverse the appellate court.

## I

Appellant argues that the recent amendment to the Workers' Compensation Act, R.C. 4121.80 (Am. Sub. S.B. No. 307, effective August 22, 1986), applies, by its own terms, to cases pending in a court of appeals on the effective date of the statute. R.C. 4121.80(H) provides:

"This section applies to and governs any action based upon a claim that an employer committed an intentional tort against an employee pending in any court on the effective date of this section and all claims or actions filed on or after the effective date, notwithstanding any provisions of any prior statute or rule of law of this state."

The court of appeals, however, determined that the General Assembly did not intend to make this section applicable to cases pending on appeal. In the appellate court's view, once a trial court enters its final judgment, the case is no longer "pending in any court."

We believe this to be an unduly narrow reading of the statute. We begin with the time-honored rule that words used by the General Assembly are to be construed according to their common usage. *Eastman* v. *State* (1936), 131 Ohio St. 1, 5 O.O. 248, 1 N.E. 2d 140, paragraph five of the syllabus; R.C. 1.42. The word "pending" is defined in Black's Law Dictionary (5 Ed. 1979) 1021, as: "Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment."[1]

Although the trial court did, pursuant to R.C. 2505.02, enter a final judgment, which was a precondition to appeal, the Ohio Constitution additionally vested authority in the courts of appeals to enter final judgments. Section 3(B)(3), Article IV of the Ohio Constitution provides, in part:

"A majority of the judges hearing the cause shall be necessary to render a judgment. Judgments of the courts of appeals are *final* except as provided in section 2(B)(2) of this article. * * *"[2] (Emphasis added.)

It has long been established that an

---

[1] See, also, Ballentine's Law Dictionary (3 Ed. 1969) 929-930; *Midkiff* v. *Colton* (C.A. 4, 1917), 242 F. 373, 381; *Ex parte Craig* (C.A. 2, 1921), 274 F. 177, 187 (cause is pending while still open to appeal, modification or rehearing, and until final judgment is rendered); *Nichols* v. *Pierce* (C.A. D.C. 1984), 740 F. 2d 1249, 1256.

[2] See, also, App. R. 12(B) and 27; *Cowen* v. *State, ex rel. Donovan* (1920), 101 Ohio St. 387, 394, 129 N.E. 719, 721-722.

appeal is merely a proceeding in the original cause which "has the effect of continuing the cause and suspending or vacating the decree of the inferior tribunal until the cause is heard in the appellate court." *Heirs of Ludlow* v. *Kidd's Executors* (1828), 3 Ohio 541, 547-548; *Charles* v. *Fawley* (1904), 71 Ohio St. 50, 53-54, 72 N.E. 294, 295-296.

Thus, we hold that a case remains "pending in any court," for purposes of R.C. 4121.80(H), at least until the entry of final judgment by a court of appeals considering the case upon an appeal of right.[3] In the case *sub judice,* appellees saved their right of appeal by filing notice with the trial court in July 1986, before the court of appeals entered final judgment in February 1987. The new statute became effective in August 1986, and therefore would be applicable, if all other constitutional criteria were met.

## II

Having determined that appellees' cause of action was in fact a "pending action," we now address the issue of whether the statute may be applied to causes of action which accrued prior to its effective date. Because such analysis entails a judicial review of what the General Assembly has declared to be the public policy of the state, we must consider the legality of such act only upon precise and well-accepted principles of analysis.

Ordinarily, laws are enacted to regulate future conduct and are, in that respect, reasonable legislative acts. The difficulty arises when such legislation attempts to regulate or prohibit that which has already occurred, since the General Assembly may not constitutionally impose a new standard upon past conduct.

Retroactive laws and retrospective application of laws have received the near universal distrust of civilizations. English common law, as expressed and commented upon by Bracton, Coke, Bacon and Blackstone, has fully articulated the disdain of retroactive laws. See, *e.g.,* Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence (1936), 20 Minn. L. Rev. 775, 780. The laws of all the states and the federal government have reflected this same attitude. See, *e.g., id.* at 781, and cases collected at fn. 22.

The possibility of the unjustness of retroactive legislation led to the development of two rules: one of

---

[3] Former Chief Justice Welch further stated in *Bode* v. *Welch* (1875), 29 Ohio St. 19, 22, that "[t]hat which can be vacated and superseded is not final, as between parties having the power to set it aside." This statement could be broadly construed to extend the scope of the "pending in any court" language to include motions for reconsideration, motions to certify the record in this court, motions for a writ of certiorari in the United States Supreme Court and any number of other motions and filings seeking to invoke the jurisdiction of a "judicial" tribunal. These issues are not before us here. We merely note that at the time of the decision in *Bode,* by statute promulgated under the authority of the Ohio Constitution of 1851, appeal could be taken from the old district courts to the Ohio Supreme Court *as a matter of right,* thus giving the parties the power to appeal without intervention of the court's discretion, as is now provided in Section 2(B)(2)(d), Article IV of the Ohio Constitution. See Skeel, Constitutional History of Ohio Appellate Courts (1957), 6 Cleve. Mar. L. Rev. 323, 326; cf. R.S. 6710 (1883). During a direct appeal as of right to a court of appeals, as *Bode* was in 1875, in the case *sub judice,* the cause is "pending" until entry of final judgment by the appellate court, under the principle announced in *Bode* and applied today.

statutory construction, and the other of constitutional limitation. The rule of statutory construction operated to set the ban against retroactivity upon laws affecting prior acts, events or cases. However, this principle was not applied to ban all legislation having retrospective effect. General laws of Parliament and of the King were, under this rule of construction, considered to have only prospective effect unless the Act expressly stated that it was to be applied retrospectively. If it so stated, then, the underlying principle of justice notwithstanding, the law would receive retrospective application.[4]

The courts of this country adopted the above rule of statutory construction, having the same form and power as at English common law. See, e.g., cases collected in 59 Corpus Juris (1932) 1159-1172. This rule has been embodied in Ohio law by R.C. 1.48 which states: "A statute is presumed to be prospective in its operation unless expressly made retrospective."

The second rule, that of constitutional limitation, was developed first in this country and was based upon the same principle of justice underlying the rule of statutory construction. This principle of justice was expanded logically from the rule of statutory construction, to "include a prohibition against laws which commenced on the date of enactment and which operated in futuro, but which, in doing so, divested rights, particularly property rights, which had been vested anterior to the time of enactment of the laws." Smead, supra, at 781-782; see, also, Society for the Propagation of the Gospel v. Wheeler (1814), 22 F. Cas. 756 (No. 13,156). This second rule assumed constitutional proportions at an early state in American jurisprudence. See, e.g., Fletcher v. Peck (1810), 10 U.S. (6 Cranch) 87, 135; Story on the Constitution (1833), Sections 1398-1399.

By its Constitution of 1851, Ohio has quite clearly adopted the above prohibition against retroactive legislation. Section 28, Article II states that: "The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts * * *." (Emphasis added.) This was a much stronger prohibition than the more narrowly constructed provision in Ohio's Constitution of 1802.[5] Accordingly, it must be concluded that Ohio has adopted both of the foregoing safeguards against retrospective legislation.

In considering whether a particular law can be applied retrospectively, we must first determine whether we should apply the rule of statutory construction or immediately engage in the constitutional review of the statute. In Ireland v. Palestine, Braffetsville, N.P. & N.W. Turnpike Co. (1869), 19 Ohio St. 369, 373, it was stated that no constitutional question is ripe for judicial review "where the case can be disposed of upon other tenable grounds." The rule has been elaborated upon in a long line of cases.[6]

---

[4] See, e.g., Gilmore v. Shuter (1678), 83 Eng. Rep. 531, 2 Mod. 310, 2 Lev. 227; cf. King v. Thurston (1664), 1 Lev. 91, 83 Eng. Rep. 312.

[5] Section 16, Article VIII of that Constitution stated: "No ex post facto law, nor any law impairing the validity of contracts, shall ever be made," merely reflecting the terms used in Section 10, Article I of the United States Constitution.

[6] See, e.g., Sipe v. Murphy (1892), 49 Ohio St. 536, 544, 31 N.E. 884, 886; Wiggins v. Babbitt (1935), 130 Ohio St. 240, 241, 4 O.O. 263, 198 N.E. 873; Interstate Motor Freight System v. Bowers (1955), 164 Ohio St. 122, 134, 57 O.O. 123, 130, 128

The issue of whether a statute may *constitutionally* be applied retrospectively does not arise unless there has been a prior determination that the General Assembly has specified that the statute so apply. Upon its face, R.C. 1.48 establishes an analytical threshold which must be crossed prior to inquiry under Section 28, Article II. As we pronounced in *Kiser v. Coleman* (1986), 28 Ohio St. 3d 259, 262, 28 OBR 337, 339, 503 N.E. 2d 753, 756, where "there is no clear indication of retroactive application, then the statute may *only* apply to cases which arise subsequent to its enactment."[7] (Emphasis added.)

Moreover, to first inquire whether a statute is constitutionally *permissible,* by analysis of whether it is substantive or remedial, answers only the question of whether the General Assembly was empowered to so act in a particular instance. In no wise could such an analysis answer the more immediate and narrow question of whether the General Assembly intended its enactment to apply retrospectively.

We now consider R.C. 4121.80(H), the recent amendment to the workers' compensation laws effective August 22, 1986. By its terms, it applies to cases *pending* on the effective date of the statute, which includes causes of action which arose prior to the statute's effective date, "notwithstanding any provisions *of any prior statute or rule of law.* * * *" (Emphasis added.) Accordingly, we find in the statute a clearly expressed legislative intent that R.C. 4121.80 could be applied retrospectively.

Having determined that the statute at issue meets the threshold test for retroactive application contained in R.C. 1.48, we must now inquire whether it contravenes the ban upon retroactive legislation set forth in Section 28, Article II of the Ohio Constitution. The essence of this constitutional limitation and its applicability to laws affecting substantive rights were set forth by this court as follows: "Under the constitutional prohibition, the general assembly has no power to pass retroactive laws. Art. II, sec. 28. Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective or retroactive." *Cincinnati* v. *Seasongood* (1889), 46 Ohio St. 296, 303, 21 N.E. 630, 633, citing *Society for the Propagation of the Gospel* v. *Wheeler, supra,* at 767.[8]

With regard to substantive rights,

---

N.E. 2d 97, 104, and cases cited therein; *Greenhills Home Owners Corp.* v. *Greenhills* (1966), 5 Ohio St. 2d 207, 212, 34 O.O. 2d 420, 422-423, 215 N.E. 2d 403, 407.

[7] Accordingly, the method of analysis set forth in fn. 4 of *French* v. *Dwiggins* (1984), 9 Ohio St. 3d 32, 36, 9 OBR 123, 127, 458 N.E. 2d 827, 831, is mistaken. It was there stated that "the question of whether * * * [a statute] was made *expressly* retroactive by the General Assembly is of no consequence * * *."

[8] See, also, *Trustees of Cuyahoga Falls Real Estate Assn.* v. *McCaughy* (1853), 2 Ohio St. 152, 155. Owing to the similarity between Ohio's constitutional provision and that in *Wheeler*, Justice Story's definition of retroactive law has consistently been followed by this court. See, *e.g.,* cases collected in 17 Ohio Jurisprudence 3d (1980) 70, Constitutional Law, Section 554, at fns. 50-56; *Rairden* v. *Holden* (1864), 15 Ohio St. 207, 210; *Commissioners* v. *Rosche Bros.* (1893), 50 Ohio St. 103, 111, 33 N.E. 408, 409; *Gompf* v. *Wolfinger* (1902), 67

it has been more particularly held that a statute is substantive when it does any of the following: impairs or takes away vested rights, *State, ex rel. South Euclid,* v. *Zangerle* (1945), 145 Ohio St. 433, 437, 31 O.O. 57, 59, 62 N.E. 2d 160, 163; affects an accrued substantive right, *In re Nevius* (1963), 174 Ohio St. 560, 564, 23 O.O. 2d 239, 241, 191 N.E. 2d 166, 169-170; imposes new or additional burdens, duties, obligations or liabilities as to a past transaction, *Miller* v. *Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749, 752; *State* v. *Cincinnati Tin & Japan Co.* (1902), 66 Ohio St. 182, 212, 64 N.E. 68, 71; *State, ex rel. Szalay,* v. *Zangerle* (1940), 137 Ohio St. 195, 198, 17 O.O. 551, 552, 28 N.E. 2d 592, 593; creates a new right out of an act which gave no right and imposed no obligation when it occurred, *Johnson* v. *Bentley* (1847), 16 Ohio 97, 99-100; *Lewis* v. *McElvain* (1847), 16 Ohio 347, 355; creates a new right, *State, ex rel. Crotty,* v. *Zangerle, supra,* at 535, 11 O.O. at 228, 14 N.E. 2d at 934; gives rise to or takes away the right to sue or defend actions at

law, *Smith* v. *New York Central RR. Co.* (1930), 122 Ohio St. 45, 48, 170 N.E. 637, 638; *State, ex rel. Slaughter,* v. *Indus. Comm.* (1937), 132 Ohio St. 537, 543, 8 O.O. 531, 534, 9 N.E. 2d 505, 508; *Weil* v. *Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 203, 22 O.O. 205, 207, 39 N.E. 2d 148, 151.

On the other hand, following the adoption of the Constitution of 1851, *Rairden* v. *Holden, supra,* at paragraph two of the syllabus, held that: "A statute purely remedial in its operation on pre-existing rights, obligations, duties and interests, is not within the mischiefs against which [Section 28, Article II] * * * was intended to guard, and is not, therefore, within a just construction of its terms." Such view has been consistently maintained up to and including the present time.[9]

Remedial laws are those affecting only the remedy provided.[10] These include laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right.[11] While we recognize the occasional

Ohio St. 144, 150, 65 N.E. 878, 880; *Gray* v. *Toledo* (1909), 80 Ohio St. 445, 447, 89 N.E. 12, 13; *Safford* v. *Metropolitan Life Ins. Co.* (1928), 119 Ohio St. 332, 335-336, 164 N.E. 351, 352; *State, ex rel. Crotty,* v. *Zangerle* (1938), 133 Ohio St. 532, 535, 11 O.O. 226, 228, 14 N.E. 2d 932, 934; *Weil* v. *Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 203, 22 O.O. 205, 207, 39 N.E. 2d 148, 151. See, also, *Sturges* v. *Carter* (1885), 114 U.S. 511.

[9] See, *e.g., Smith* v. *New York Central RR. Co., supra,* at paragraph one of the syllabus; *State, ex rel. Slaughter,* v. *Indus. Comm., supra,* at paragraph three of the syllabus; *Weil* v. *Taxicabs of Cincinnati, Inc., supra,* at 203, 22 O.O. at 207, 39 N.E. 2d at 151; *State, ex rel. Holdridge,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 175, 179, 40 O.O. 2d 162, 165, 228 N.E. 2d 621, 624; *Kilbreath* v. *Rudy* (1968), 16 Ohio St. 2d 70,

45 O.O. 2d 370, 242 N.E. 2d 658, paragraphs one and two of the syllabus; *Gregory* v. *Flowers* (1972), 32 Ohio St. 2d 48, 52-53, 61 O.O. 2d 295, 297, 290 N.E. 2d 181, 184; *Denicola* v. *Providence Hospital* (1979), 57 Ohio St. 2d 115, 11 O.O. 3d 290, 387 N.E. 2d 231, paragraph one of the syllabus; *French* v. *Dwiggins* (1984), 9 Ohio St. 3d 32, 33, 9 OBR 123, 124, 458 N.E. 2d 827, 849; *Kiser* v. *Coleman, supra,* at 262, 28 OBR at 340, 503 N.E. 2d at 756.

[10] See, *e.g., Rairden* v. *Holden, supra; Templeton* v. *Kraner* (1874), 24 Ohio St. 554, 562; *Gilpin* v. *Williams* (1874), 25 Ohio St. 283, 297; *Smith* v. *New York Central RR. Co., supra,* at 48-49, 170 N.E. at 638.

[11] *Gager* v. *Prout* (1891), 48 Ohio St. 89, 107, 26 N.E. 1013, 1015; *State, ex rel. Crotty,* v. *Zangerle, supra,* 133 Ohio St. at 536, 11 O.O. at 28, 14 N.E. 2d at 934.

substantive effect, it is yet generally true that laws which relate to procedures are ordinarily remedial in nature, *Wellston Iron Furnace Co.* v. *Rinehart* (1923), 108 Ohio St. 117, 140 N.E. 623, paragraph one of the syllabus, including rules of practice, courses of procedure and methods of review, *In re Nevius, supra,* 174 Ohio St. at 564, 23 O.O. 2d at 241, 191 N.E. 2d at 169-170, but not the rights themselves, *Weil* v. *Taxicabs of Cincinnati, Inc., supra.*

The recent pronouncements in *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, 6 OBR 162, 451 N.E. 2d 1185, unfortunately may have blurred a number of the foregoing legal distinctions. In that case, the statutory inquiry under R.C. 1.48 as to whether the General Assembly intended the comparative negligence law, R.C. 2315.19, to operate retrospectively, was pointedly ignored by the majority of the court and the secondary, constitutional inquiry was erroneously set forth as the test for legislative intent. *Id.* at 104, 6 OBR at 165, 451 N.E. 2d at 1188-1189. Applying R.C. 1.48 should have fully determined the issue of legislative intent, and the inquiry whether the legislature had overstepped its constitutional limitations was, at that point in the analysis, entirely irrelevant. *Id.* at 108, 6 OBR at 169, 451 N.E. 2d at 1192. The majority proceeded under the mistakenly assumed standard, *i.e.,* whether under Section 28, Article II the statute was substantive or remedial, and then concluded that it was "a definitional mire." *Id.* at 104, 6 OBR at 165, 451 N.E. 2d at 1189. While we admit that the line between substantive and remedial may be difficult to ascertain in some cases, as noted by Justice Locher in his dissent in *Wilfong*, it is nonetheless true that the terms as applied ordinarily provide "readily distinguishable contours." *Id.* at 106, 6 OBR at 167, 451 N.E. 2d at 1190.

The majority in *Wilfong,* having discarded the proper inquiry in such matters, irrationally concluded that the comparative negligence statute was remedial since it did "not alter a defendant's liability for his negligent acts. * * *" *Id.* at 104, 6 OBR at 165, 451 N.E. 2d at 1189. Quite the reverse was obvious to most legal observers in Ohio since contributory negligence, which was obviated by the statute then at issue, had been, under the common law, a complete defense to any recovery, since it constituted an intervening cause of the plaintiff's injury. By mischaracterizing what was clearly a substantive defense, and by narrowly focusing upon the additional statutory provision allowing a prorata recovery, that decision created confusion for the substantive/remedial inquiry. Through the discussion herein we hopefully avoid this detour from sound legal analysis.

In the present case, we are urged to find that the retroactive application of the definition of the term "substantially certain," found within R.C. 4121.80(G)(1), is constitutionally permissible. The new statute states: " 'Substantially certain' means that an employer acts with *deliberate intent* to cause an employee to suffer injury, disease, condition, or death." (Emphasis added.)

At the time when appellees' cause of action accrued, as well as when the complaint was filed and later, when their appeal was pending, the intentional tort requirement of substantial certainty, as set forth by this court in *Jones* v. *VIP Development Co., supra,* 15 Ohio St. 3d at 95, 15 OBR at 250, 472 N.E. 2d at 1051, was as follows: "Thus, a specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a

perceived threat of harm to others which is *substantially certain* * * * to occur. * * *" (Emphasis *sic*.)

It therefore becomes apparent that R.C. 4121.80(G)(1) would remove appellees' potentially viable, court-enunciated cause of action by imposing a new, more difficult statutory restriction upon appellees' ability to bring the instant action. We therefore hold that this result constitutes a limitation, or denial of, a substantive right, and consequently causes the statute to fall within the ban against retroactive laws established by Section 28, Article II of the Ohio Constitution.

Accordingly, R.C. 4121.80(G) cannot be retroactively applied to bar appellees' cause of action.

## III

At this point, we shall address the prior holdings of this court in *Blankenship, supra,* and *Jones, supra,* and their progeny, which cases have created a confusing status of the law of Ohio for the interpretation and application of the workers' compensation Act.[12] In *Jones,* the majority sought to establish a test for "intent" in a workers' compensation intentional tort. The court based its test largely upon the explanatory language for "intent" found in 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A, that "the actor proceeds despite a perceived threat of harm to others which is substantially certain, not merely likely, to occur." Ultimately, there was no uniform application of the

theory. Instead, courts, counsel and legal authorities have been impelled to apply their own often contradictory interpretations of this standard upon a wide variety of fact patterns. Also, *Jones* had direct impact upon the rule that the workers' compensation remedy was to be the exclusive remedy for injuries suffered by the employee within the workplace. Unsurprisingly, *Jones* has inspired a plethora of commentary within the legal community. We shall not review this commentary but feel it necessary to set forth some of the historical background in order to properly examine the problems presented, and hopefully arrive at guidelines for their solution.

Historically, the manner by which an employee in Ohio could recover for injuries received in the workplace followed the development of the law in other states. In the earlier stages, a worker could only bring an action at common law against his employer. In order to recover it was necessary to allege and prove *fault* upon the part of his employer. The employer had available the common-law defenses of the fault, or contributory negligence, of the employee or his fellow worker. He could also assert that the injured employee knew, and accepted, the inherent risks of the workplace. See, generally, Young, Workmen's Compensation Law of Ohio (2 Ed. 1971 and Supp. 1987).

This litigation-based system became widely criticized as not meeting the needs of injured workers. A great

---

[12] The problems presented by the case *sub judice,* and the other similar cases before us, originated with the issuance of the opinion in *Blankenship.* In that case, this court espoused a common-law right of action for an employee against his employer for an injury received in the course of his employment. This established an exception to the rule of exclusivity of the workers' compensation recovery for work-related injuries. The majority of the court recognized and adopted the theory of "intentional tort" for application to actions based upon certain injuries occasioned within the workplace.

number of such injuries were reportedly uncompensated because of the above legal defenses. In response, the Ohio General Assembly, in 1911 (102 Ohio Laws 524), enacted the first law pertaining to compensation for industrial injuries. This law was enacted without a specific constitutional genesis. However, the Act was followed by the adoption in 1912 of Section 35, Article II. It specifically empowered the General Assembly to provide for the compensation of injuries or occupational diseases "occasioned in the course of such workmen's employment." It also authorized the General Assembly to enact legislation providing for compulsory contribution by employers into a statewide fund in order to pay such awards.

The constitutional provision and the derivative legislative Acts were public policy trade-offs. Employees relinquished their right to bring common-law actions against their employers in exchange for no-fault recovery, i.e., automatic entitlement to reduced benefits for such injuries. In addition, the employees would receive compensation considerably earlier. This trade-off, which obtained for the employee a certain and speedy recovery in exchange for granting a more limited liability to the employer, benefits employers, employees and the public alike.

The original statutory provisions of 1911 allowed an employee's election of remedies between workers' compensation benefits and the common-law action against his employer whenever the injury resulted from a "wilful act"

committed by the employer, or whenever the employer failed to comply with lawful safety requirements. G.C. 1465-61 (102 Ohio Laws 529). The section contained no definition of the term "wilful act," and it appears that there was considerable legal activity against employers based upon alleged "wilful acts." In 1914, the Ohio General Assembly amended G.C. 1465-76 (former 1465-61) defining "wilful act," as an act done "knowingly and purposely with the direct object of injuring another." (104 Ohio Laws 194.) Thereafter, this court recognized that the "wilful act" exception had caused expansive litigation that constituted an attack on the policy underpinnings of the workers' compensation law. *Patten v. Aluminum Castings Co.* (1922), 105 Ohio St. 1, 136 N.E. 426.

Also, in *Gildersleeve v. Newton Steel Co.* (1924), 109 Ohio St. 341, 142 N.E. 678, this court held, at paragraph one of the syllabus:

"The term 'willful act' employed in Section 1465-76, General Code, has been therein 'construed to mean an act done knowingly and purposely with the direct object of injuring another.' As thus employed, it imports an act of will and design and of conscious intention to inflict injury upon some person. Gross negligence or wantonness can no longer be a willful act under this section, unless conjoined with a purpose or intention to inflict such injury."

Finally, the remedy provided under the workers' compensation laws was made the exclusive remedy by the amendment to Section 35, Article II, effective January 1, 1924.[13] On its

---

[13] In pertinent part, the section was amended to read, as it still does today:

"* * * Such compensation shall be in lieu of *all* other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who

pays the premium or compensation provided by law * * * *shall not be liable to respond in damages at common law* or by statute for such death, injuries or occupational disease." (Emphasis added.)

face, it granted immunity to the complying employers from *any* common-law actions for injuries suffered by employees in the workplace. Although G.C. 1465-76 was not specifically repealed by the General Assembly until 1931 (114 Ohio Laws 39), this court found that such section had been repealed by implication by the constitutional amendment of 1924. *Mabley & Carew Co.* v. *Lee* (1934), 129 Ohio St. 69, 1 O.O. 366, 193 N.E. 745, overruled on other grounds by *Triff, infra.* Also, the General Assembly has, in various forms over the years, reinforced its commitment to the exclusivity-of-remedy rule.[14]

However, in *Triff* v. *Natl. Bronze & Aluminum Foundry Co.* (1939), 135 Ohio St. 191, 4 O.O. 125, 198 N.E. 485, paragraph two of the syllabus, this court held that the right of an employee to file suit for the negligence of his employer had not been taken away by Section 35, Article II of the Constitution of Ohio, or by G.C. 1465-70 if the injury resulted from a non-compensable occupational disease. The General Assembly immediately amended the workers' compensation laws to restore the exclusivity of remedy. This amendment was set forth

within G.C. 1465-70 which, in pertinent part, stated as follows:

"Employers who comply with the provisions of section 1465-69 shall not be liable to respond to damages at common law or by statute, for any injury, disease, or bodily condition, whether such * * * is compensable under this act or not * * *."[15] See 118 Ohio Laws 422, 426-427.

G.C. 1465-70 was later recodified as R.C. 4123.74 and contained the same provisions until amended by Am. Sub. S.B. No. 307 in 1986.

Even though Section 35, Article II of the Ohio Constitution and the derivative statutes appeared to be clear, particularly in light of their constitutional and legislative history, *Blankenship, supra,* in 1982, specifically pronounced the right of an employee to bring an action against his employer for an "intentional tort." The majority concluded that "the protection afforded by the Act *has always been* for negligent acts and not for intentional tortious conduct." (Emphasis added.) *Id.* at 614, 23 O.O. 3d at 508, 433 N.E. 2d at 577.

Nevertheless, a general review of the workers' compensation laws in this country supports the conclusion that

---

[14] G.C. 1465-70 (103 Ohio Laws 81) (1913) provided in pertinent part:

"Employers who comply with the provisions of * * * [G.C. 1465-69] shall not be liable to respond in damages at common law or by statute, save as hereinafter provided, for injury or death of any employe, wherever occurring * * *."

[15] In addition to this irresistibly clear language utilized above, the General Assembly concluded the amendment with the following declaration:

"Emergency.

"Section 3. This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public

peace, health and safety. The reason for such necessity lies in the fact that the law of this state relating to the rights and remedies of employers and employes has recently been so construed by the supreme court as to disturb relations between employers and employes and to create a basis for litigation contrary to the Ohio workmen's compensation plan and it is necessary that the rights and remedies of all employers and employes shall be brought within the plan for workmen's compensation in order to allay doubts as to rights and remedies and preserve industrial peace and progress in this state. Therefore this act shall go into immediate effect." (118 Ohio Laws at 427.)

112

these Acts were not intended to shield an employer from common-law tort liability for injuries he intentionally and maliciously inflicted upon his employees. For example, it is observable that many states have provided exceptions to the exclusivity provisions of their workers' compensation Acts and allowed the pursuit of a common-law remedy against an employer for injuries resulting from the employer's "willful," "deliberate," or "intentional," misconduct.[16] Of course, where there exist such statutory exceptions, the vast majority of courts have held that conduct falling short of an actual intent to injure is insufficient to overcome the exclusivity provisions of the workers' compensation Acts.[17]

In one of these cases, *Serna* v. *Statewide Contractors, Inc.* (1967), 6 Ariz. App. 12, 429 P. 2d 504, the appellate court of Arizona, in affirming the trial court's granting of a summary judgment for the employer, found that the acts of the employer had not constituted "willful misconduct," which term was provided in the Arizona workers' compensation Act. In this case, the employer had constructed a ditch twenty-five feet deep. The state accident prevention department had given the employer at least fourteen warnings of safety violations. Among these were that: the sides were insufficiently sloped and shored up; and, there were no escape ladders within reach of the employees. The state labor management safety committee had even gone so far as to meet with the company vice-president to discuss the

safety problems. The evidence in *Serna* also shows that prior to the fatal occurrence, there had been another cave-in in which one of the decedents had been buried up to his waist; the decedents had been instructed that in the event of a cave-in they were to try to crawl inside a sewer pipe in the ditch and wait until they were dug out. At the time of the fatal cave-in, the decedents had tried, but failed, to reach the sewer pipe.

Eventually, a serious cave-in occurred, resulting in the deaths of two employees. In the intentional tort suit which followed, the court found that these deaths were the direct result of a conscious refusal to follow established safety requirements. Nevertheless, the court affirmed the trial court's granting of summary judgment to the employer because the statutory exception to the exclusivity rule required the employer's "willful misconduct." For our particular review here, we conclude that this view is unduly narrow, in that the employer had actual knowledge of the exact dangers which ultimately caused death. It knew of the high degree of probability that a cave-in would occur and that, if it did, death or serious permanent injury would surely result. It is also interesting to note that the *Serna* case cited this court's opinion in *Gildersleeve, supra,* as being instructive and supportive for the court's restrictive interpretation of the term "willful misconduct."

Additionally, in interpreting the exclusivity provisions of the workers' compensation Acts, the courts have

---

[16] See, *e.g.,* Larson, *supra,* at Section 68.13; Annotation, What Conduct is Willful, Intentional, or Deliberate Within Workmen's Compensation Act Provision Authorizing Tort Action for Such Conduct (1979), 96 A.L.R. 3d 1064. As noted previously, Ohio also, in earlier years, had statutory ex-

ceptions to the exclusivity provisions of the workers' compensation laws.

[17] See Birnbaum & Wrubel, Worker's Compensation and the Employer's Immunity Shield — Recent Exceptions to Exclusivity (1982), 5 J. of Products Liability 119; Larson, *supra,* at Section 68.13.

generally permitted the common-law remedies for injuries caused by an employer's assault and/or battery upon an employee, whether or not there was any specific statutory exception.[18] This exception constituted one of the earlier judicially recognized and limited exceptions to the exclusivity-of-remedy rule under workers' compensation law. It was reasoned that in so acting toward its employee, the employer should not then be heard to say that his intentional act was an "accidental" injury deriving from employment duties within the workplace. Another judicially pronounced exception to exclusivity has been that of the "intentional tort" as was set forth by this court in *Blankenship*. While recognizing the common-law right of recovery for such a tort, courts have quite consistently refused to stretch the common-law liability of an employer to include accidental injuries resulting from the gross, wanton, reckless, or culpable negligence of the employer.

Traditionally, a state court's reluctance to adopt exceptions to the exclusive remedy rule and the tendency to strictly construe statutory exceptions stem from an unwillingness to tamper with the terms of the legislative bargain underlying workers' compensation. An expansive interpretation of the intentional tort exception would thwart the basic purposes of the statutory scheme by eroding the exclusivity of both the liability and the recovery provided by workers' compensation. See, *e.g.*, *Kofron* v. *Amoco Chemicals Corp.* (Del. 1982), 441 A. 2d 226.

A notable example of the restricted analysis with which courts have viewed alleged intentional tort injuries is to be found in *Beauchamp* v. *Dow Chemical Co.* (1986), 427 Mich. 1, 398 N.W. 2d 882. Therein, a research chemist brought an action for damages against his employer because of his alleged exposure to Agent Orange during employment. Even though that state's workers' compensation laws did not provide for an intentional injury exception, the Michigan Supreme Court accepted the theory that an intentional injury caused by the employer was not within the exclusivity bar of the workers' compensation law. It then applied what it considered to be the appropriate "substantial certainty" theory. Realizing the difficulty in

---

[18] Examples of the assault and battery or "true" intentional tort exceptions to the exclusivity rule are found in the following cases: *Boek* v. *Wong Hing* (1930), 180 Minn. 470, 231 N.W. 233, where the employer intentionally and maliciously inflicted injury by striking the employee with a broom handle; *Magliulo* v. *Superior Court* (1975), 47 Cal. App. 3d 760, 121 Cal. Rptr. 621, where the employer also physically assaulted the employee; *Doney* v. *Tambouratgis* (App. 1977), 140 Cal. Rptr. 782, where the plaintiff, a dancer in a bar, was asked to report to her employer's office after working hours, where the employer made advances and struck the plaintiff; *Schutt* v. *Lado* (1984), 138 Mich. App. 433, 360 N.W. 2d 214, where the plaintiff employed by a doctor was locked in an office, threatened with violence, and battered; *Sitzman* v. *Schumaker* (Mont. 1986), 718 P. 2d 657, where the employer intentionally hit the employee on the head with a pipe; *Pryor* v. *United States Gypsum Co.* (W.D. Mo. 1984), 585 F. Supp. 311, sex-based harassment and discharge and assault and battery; *Iverson* v. *Atlas Pac. Eng.* (1983), 143 Cal. App. 3d 219, 191 Cal. Rptr. 696, where the plaintiff-employee was forced by a fellow employee to remain in a confined area against his will, and with employer's knowledge the fellow employee beat upon a steel target with a sledge hammer, subjecting plaintiff to extremely loud noises which caused plaintiff's hearing loss.

analyzing the intentional tort within the workers' compensation context, that court noted at fn. 69 that the "intentional tort standard governing liability for punches in the nose are [sic] not readily transferred to toxic torts." The court accepted "intentional tort" and "substantial certainty" theories as exceptions to the exclusivity bar, but then stated that such standards must be kept within strict bounds. Accordingly, it refused to find that the facts presented established an intentional tort.

Interestingly, the court in *Beauchamp* did refer to a case characterized by facts which, in its view, and in our view also, would meet the "substantial certainty" test. However, that case, *People* v. *Film Recovery Systems*,[19] was not one interpreting an "intentional injury" exception to workers' compensation. Instead, *Film Recovery* was a criminal case wherein a business engaged in recovering silver from film negatives required non-English speaking employees to work with cyanide. The employer consciously kept them from knowing the danger of the chemicals. The facts showed that the bottles of cyanide contained adequate warnings concerning their use, but that the employer hired only Mexicans who could not read the warnings. Eventually, one worker died, and others were seriously injured as a result of cyanide poisoning. It is of significance for our discussion here that the Michigan Supreme Court also cited the case of *Serna, supra,* as being an acceptable example of facts which could provide the inference of intent for purposes of an exception to the exclusivity rule of the Michigan Act.[20]

As previously mentioned, we do not in the case *sub judice* interpret a statutory exception to the exclusivity rule. Instead, we must interpret what this court has judicially declared to be the exception, accepting and applying the Restatement of the Law 2d, Torts, and Prosser & Keeton's definition of intent, and all within the purview of Ohio's workers' compensation constitutional and legislative history. Nebulous as this area might be to define, we must attempt to provide guidance in making the legal distinction between the theory of "substantial certainty," as inferred intent, and the negligence of the employer. The tort that we strive to shine some light upon is, in the application of the Restatement, somewhat less than the deliberate assault on an employee by an employer, but more than the grossly

---

[19] No citation for this case is found in *Beauchamp, supra*. It is, however, an unreported trial level decision from the Circuit Court of Cook County, Illinois, case Nos. 83-10487, 83-10488 and 84-5064. The case is currently pending in the appellate court.

[20] In contrast, the Supreme Court of West Virginia set forth an expansive interpretation of exclusivity in *Mandolidis* v. *Elkins Industries, Inc.* (W.Va. 1978), 161 W. Va. 695, 246 S.E. 2d 907. That court considered a West Virginia statute permitting suits against the employer "[i]f injury or death result to any employee from the deliberate intention of his employer to produce such injury or death." It concluded that the statute also permitted such suit for "wilful, wanton and reckless misconduct," and that "deliberate intention" did not mean "*specific* intent." (Emphasis added.) In 1983 the West Virginia Legislature sharply modified this opinion by specifying that "deliberate intention" did not include willful or reckless misconduct. The new Act, however, still permitted common-law actions for willful violations of safety standards and aggravated instances of knowingly providing unsafe workplaces in violation of statutes or regulations.

negligent or reckless act of an employer which occasions an injury to the employee.

Subsequent to the majority of this court's determining in *Jones* that an intentional tort should be measured by the yardstick of "substantially certain to occur," trial courts have been led to misconstrue such phrase, transforming negligence cases into intentional tort cases. Claims in a number of cases have been based upon injuries caused by some degree of negligence on the part of the employer. These have ranged from simple negligence to reckless and wanton disregard of the duty to protect the health and safety of employees, none of which presents an act which is substantially certain to occasion injury.

This court, in its attempt to define the intentional injury, resorted to the Restatement of the Law 2d, Torts (1965), Section 8(A), wherein Comment *b* thereto states that: "All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. * * *" *Id.* at 15.

Prosser & Keeton, in Law of Torts (5 Ed. 1984) 36, Section 8, agree with the Restatement that intent is broader than a desire to bring about the physical results, and that it extends to those consequences the actor believes are substantially certain to follow from what he does. However, Prosser warns of the pitfalls into which one may descend by stating: "[T]he mere knowl-edge and appreciation of a risk — something short of substantial certainty — is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty." *Id.* at 36.

The Supreme Court of New Jersey in *Millison* v. *E. I. du Pont de Nemours & Co.* (1985), 101 N.J. 161, 501 A. 2d 505, developed an excellent analysis in this area and established criteria which are worthy of note and reference by this court.[21] Therein, the court considered those "categories of employer conduct [which] will be sufficiently flagrant so as to constitute an 'intentional wrong,' thereby entitling a plaintiff to avoid the 'exclusivity' bar * * *. The essential question therefore becomes what level of risk-exposure is so egregious as to constitute an 'intentional wrong.' " *Id.* at 176-177, 501 A. 2d at 513-514. This is the precise issue before us.

The court, in its analysis, stated at 177, 501 A. 2d at 513, that: "[I]f 'intentional wrong' is interpreted too broadly, this single exception would swallow up the entire 'exclusivity' provision of the Act, since virtually all employee accidents, injuries, and sicknesses are a result of the employer or a co-employee intentionally acting to do

---

[21] In *Millison,* the court was required to review the exclusivity of the New Jersey workers' compensation statutes, and par-ticularly the express exception for an "intentional wrong."

whatever it is that may or may not lead to eventual injury or disease. Thus in setting an appropriate standard by which to measure an 'intentional wrong,' we are careful to keep an eye fixed on the obvious: the system of workers' compensation confronts head-on the unpleasant, even harsh, reality — but a reality nevertheless — that industry knowingly exposes workers to the risks of injury and disease."

The court then stated that its holding was within both the "intent" analysis of the Restatement of Torts 2d, *supra,* and that of Prosser & Keeton, Law of Torts, *supra,* Section 8, at 36. Within this context, the court explained at 178-179, 501 A. 2d at 514, that in determining the level of "risk exposure that will satisfy the 'intentional wrong' exception * * * [c]ourts must examine not only the conduct of the employer, but also the context in which that conduct takes place: may the resulting injury or disease, and the *circumstances in which it is inflicted on* the worker, fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover *only* under the Compensation Act?" (Emphasis *sic.*)

Significantly, the court noted further that "the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the Act is not circumvented simply because a known risk later blossoms into reality. We must demand a virtual certainty. See *Blankenship, supra,* 433 N.E. 2d at 581 (Locher, J., concurring)." *Id.* at 178, 501 A. 2d at 514.

The holding in *Jones* under consideration here was that an intentional tort did not require a specific intent to injure, but only that "the actor proceeds despite a perceived threat of harm to others which is *substantially certain,* not merely likely, to occur." (Emphasis added.)

*Jones* applied the Restatement of Torts 2d, and stated: "It is this element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct. Where a defendant acts despite his knowledge that the risk is appreciable, his conduct is negligent. Where the risk is great, his actions may be characterized as reckless or wanton, but not intentional. The actor must know or believe that harm is a substantially certain consequence of his act before intent to injure will be inferred." *Id.*

We now interpret *Jones* to require knowledge on the part of the employer as a vital element of the requisite intent. Thus, under this interpretation of *Jones,* within the purview of the Restatement of Torts 2d, and the commentary of Prosser & Keeton on Torts applicable to this area of law, we hold that in order for "intent" to be found for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation; (2) knowledge by the employer that if employees are required by virtue of their employment to be subjected to such dangerous process, procedure, instrumentality or condition, then harm to them would be a substantial certainty, and not just a high risk; (3) that the employer, under such circumstances, and with such knowledge, did act to so require the employee to continue performing his employment tasks.

We recognize that pursuant to this

interpretation of "intent" as set forth above, proof of the actual or subjective intent of the actor to accomplish the consequences is not required. Our discussion herein is directed toward significantly limiting the areas within which "intent" on the part of the actor may be circumstantially *inferred.*

To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent.

There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an "intentional tort" and therefore an exception, under *Blankenship* or *Jones,* to the exclusivity of the Act.

The criteria which must be satisfied under Civ. R. 56, as set forth within *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267, are also applicable in these types of cases: "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

Upon a motion for summary judgment pursuant to Civ. R. 56, the burden of establishing that the material facts are not in dispute and that no genuine issue of fact exists is on the party moving for the summary judgment. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. However, in that Civ. R. 56(E) requires that a party set forth specific facts showing that there is a genuine issue for trial, such party must so perform if he is to avoid summary judgment. Accordingly, in an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee.

We will now review the basic facts presented here upon summary judgment in order to apply the law as previously discussed. Robert Van Fossen, who had been an employee of Babcock & Wilcox off and on since 1969, fell at work while backing down the rear steps of a piece of machinery.

The steps had been welded onto the machine in 1968 by one David Bailey, a fellow employee of Van Fossen. Bailey testified by way of deposition that he had designed and installed the steps for his own personal use and convenience, and the convenience of others, and that he had never had any problem with them. Bailey was a union steward and a member of the safety committee at Babcock & Wilcox and had received no complaints about the installation or use of such steps or of any safety hazard presented by these steps as installed or used. Also it would appear that there were alternative means available to reach the operating position of the equipment. In other words, the employee using the equipment could choose his own method of getting to the operating position of the machine.

More pointedly, for the application of the standard which we enunciate in the case here, there was absolutely no evidence of other incidents tending to show that the facility was a dangerous instrumentality. There was no evidence that the employer had any knowledge that the employees were using a dangerous instrumentality. Further, there was no evidence that the employer had mandated that the employees, and this particular plaintiff-employee, use the steps to go up to or down from the equipment. Lastly, there was no evidence that the employer, knowing all the above, also knew that directing the employee to move up and down the steps would, with a substantial certainty, cause the injuries which in fact resulted. The facts were visibly and statistically clear that the employee was injured by accidentally slipping and falling while descending steps which had not been designed or installed by the employer.

Therefore, the trial court's entering of a summary judgment for the employer Babcock & Wilcox was appropriate, not only under the facts of this case, but under any theory that might be applied as to what constitutes an intentional tort.

Accordingly, the judgment of the court of appeals is hereby reversed, and the summary judgment as entered by the trial court for the defendant is reinstated.

*Judgment reversed.*

MOYER, C.J., LOCHER and WRIGHT, JJ., concur.

H. BROWN, J., concurs in part and dissents in part.

SWEENEY, J., dissents.

DOUGLAS, J., dissents with opinion.

H. BROWN, J., concurring in part and dissenting in part. Reduced to essentials, this case involves a slip and fall on steps leading to a platform on which appellee was working. No basis for a finding of intentional tort is presented and I concur in the judgment. Further I believe that the standard for establishing an intentional tort is properly set forth in paragraphs five and six of the syllabus. The law contained therein is consistent with my views as expressed in *Kunkler* v. *Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 522 N.E. 2d 477. I also join in paragraph seven of the syllabus which is a reiteration of well-established law.

I write separately because I believe the lengthy opinion adopted by the majority goes beyond what is necessary to decide the case before us and contains dicta which may be seized upon to confuse the law of intentional tort. This case should be read in conjunction with

*Kunkler, supra,* and *Pariseau* v. *Wedge Products, Inc.* (1988), 36 Ohio St. 3d 124, 522 N.E. 2d 511. When the three cases are read together, it is apparent that the majority of the court has adopted Section 8(A) of the Restatement of the Law 2d, Torts (1965) as the definition of intentional tort in Ohio.

To go beyond that straightforward standard in a search for alternative ways in which to express the law is, in my opinion, a disservice.

## I

Specifically, I do not agree with the suggestion that liability lies against the employer only when the employer acts "intentionally *and maliciously.*" (Emphasis added.) To inject the concept of malice into this area of the law is not only confusing, it is also wrong.

Similarly, the majority tampers with the standard of proof. Just when the court has agreed on a test of substantial certainty (see *Kunkler, supra, Pariseau, supra,* and indeed paragraphs five and six of the syllabus in the present case), the majority opinion quotes with approval this language from *Millison* v. *E.I. du Pont de Nemours & Co.* (1985), 101 N.J. 161, 178, 501 A. 2d 505, 514: "We must demand a virtual certainty." What does this mean? To what extent is "virtual certainty" meant to increase the substantial certainty test? The opinion gives us no guideline and simply leaves the bench and bar to wrestle with the implications.

Further, the majority opinion (not the syllabus law) makes the claim that wanton acts by the employer do not constitute an intentional tort. "Wanton" is defined in Black's Law Dictionary (5 Ed. 1979) 1418-1419, as follows:

"Reckless, heedless, *malicious*; characterized by extreme recklessness or foolhardiness; recklessly disregard-

ful of the rights or safety of others or of consequences. In re Wegner, C.C.A. Ill., 88 F. 2d 899, 902. Means undisciplined, unruly, *marked by arrogant recklessness of justice,* feelings of others, or the like; *willful and malicious.* Lubbock Bail Bond v. Joshua, Tex. Civ. App., 416 S.W. 2d 523, 525. *In its ordinarily accepted sense connotes perverseness exhibited by deliberate* and uncalled for *conduct,* recklessness, disregardful of rights and an unjustifiable course of action. Botto v. Fischesser [1963], 174 Ohio St. 322, 189 N.E. 2d 127, 130, 22 O.O. 2d 380." (Emphasis added.)

In short, wanton is a term of broad meaning, the spectrum of which runs from reckless to willful and malicious. To use wanton as a part of the measure of non-intentional tort is to blur the distinction which we and the courts in Ohio must make. The use of the term wanton is especially unfortunate and misleading when, in the same opinion, the majority states: "We recognize that pursuant to this interpretation of 'intent' as set forth above, proof of the actual or subjective intent of the actor to accomplish the consequences is not required. . * * *"

## II

I disagree with paragraph four of the syllabus. That syllabus includes this sentence:

"*R.C. 4121.80(G) removes an employee's potential cause of action against his employer* by imposing a new, more difficult standard for the 'intent' requirement of a workers' compensation intentional tort than that established in *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 15 OBR 246, 472 N.E. 2d 1046. * * *" (Emphasis added.)

First, the substantive effect of R.C. 4121.80(G) is not before us because we are unanimous in holding

that such statute cannot be retroactively applied. Second, I do not believe that R.C. 4121.80(G) removes an employee's potential cause of action against his employer. Nor do I believe that to be the legislative intent. I think we will find that R.C. 4121.80(G) represents an attempt by the legislature to codify the common law, and that the attempt draws heavily from the Restatement and the rationale which we have adopted in *Kunkler, supra, Pariseau, supra,* and the fifth and sixth paragraphs of the syllabus of the majority opinion in this case.

### III

*Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, 6 OBR 162, 451 N.E. 2d 1185, has nothing to do with the issues in this case. We are dealing here with legislation (unlike that in *Wilfong*) where the legislature clearly expressed the intent that it be applied retrospectively. We are unanimous in finding that the provisions in the legislation before us are substantive rather than remedial. Thus Section 28, Article II of the Ohio Constitution is dispositive.

DOUGLAS, J., dissenting.

### I

While I agree with the ultimate result reached by the majority opinion in this case, I respectfully dissent because of the supernumerary language of the opinion. With all due respect, I fear that our opinion will accomplish the seemingly impossible feat of leaving this area of the law more confused than we found it.

As an example, it is difficult to determine, at least for me, whether the majority opinion seeks a return to the absolute "exclusivity-of-remedy" rule of Section 35, Article II of the Ohio Constitution and R.C. 4123.74, formerly considered applicable to these cases,

or is satisfied that *Blankenship* v. *Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St. 2d 608, 23 O.O. 3d 504, 433 N.E. 2d 572, and *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 15 OBR 246, 472 N.E. 2d 1046, are correct results on the law pertaining to intentional torts committed against employees *during the course of employment.* Likewise, I am genuinely concerned with the statement that "* * * courts have quite consistently refused to stretch the common-law liability of an employer to include accidental injuries resulting from the gross, *wanton,* reckless, or culpable negligence of the employer." (Emphasis added.) The term "wanton" used with the word "negligence" would seem to be misplaced if we accept the usual connotation of "wanton" to include an act done with consciousness or wilfulness. Therefore, it is because of these and other concerns that I dissent notwithstanding my general agreement, as detailed *infra,* with much of the law set forth in the majority opinion.

### II

I have expressed, in my dissenting opinion in *Taylor* v. *Academy Iron & Metal Co.* (1988), 36 Ohio St. 3d 149, 155-163, 522 N.E. 2d 464, 470-477, and my concurring opinion in *Kunkler* v. *Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 140-141, 522 N.E. 2d 477, 482-483, that laws which involve an employer-employee relationship (including R.C. 4121.80) cannot apply in any respect to a relationship which is not employer-employee. The majority herein now, apparently, accepts the theory of *Blankenship* and *Jones.* The majority by approving those cases accepts the theory that the within alleged intentional tort occurred outside the "employment relationship" even though the injury did occur during the "course of employment." On this sub-

ject I continue to adhere to my view as set forth in my dissenting opinion in *Taylor.*

## III

The case at bar comes to us from the Court of Appeals for Summit County upon certification of conflict. See Section 3(B)(4), Article IV of the Ohio Constitution. The question certified to us is "* * * whether the new Workers' Compensation law, R.C. 4121.80, effective August 22, 1986, is applicable to cases pending in an appellate court by virtue of R.C. 4121.80(H) * * *."

It would seem, therefore, that the only issue certified to us for determination is the meaning of the words "pending in any court" as they are used in R.C. 4121.80(H). A review of the majority opinion reveals that the opinion goes far afield of this limited issue. That is entirely proper. When a record of a case is certified to this court for a determination of any question because of a conflict between judgments of courts of appeals, the certification brings before this court the entire case for review. *Brown* v. *Borchers Ford, Inc.* (1977), 50 Ohio St. 2d 38, 39, 4 O.O. 3d 89, 90, 361 N.E. 2d 1063, 1064; *Couk* v. *Ocean Accident & Guar. Corp., Ltd.* (1941), 138 Ohio St. 110, 20 O.O. 65, 33 N.E. 2d 9.

Given this mandate and right of complete review and also the broad language of the certification order of the court of appeals regarding the applicability of *all* of R.C. 4121.80, I would, for the reasons expressed in my concurring opinion in *Kunkler,* go further than just deciding the questions of the meaning of "pending" and the retroactivity of R.C. 4121.80(G). Literally hundreds of cases involving alleged intentional torts arising out of employment are pending in both federal and state courts. Our avoidance of the ultimate question of whether all of R.C. 4121.80 is to be retroactively applied to these cases permits the current confusion to continue unnecessarily. The judges, attorneys and litigants who are anxiously awaiting our determination will be sorely disappointed. For this additional reason, I must dissent.

## IV

Moving directly to the majority opinion, with regard to the "pending" issue, I adhere to my position as set forth in *Kunkler.* As to the retroactivity question, I would hold that R.C. 4121.80, by its terms, makes the law retroactive and accordingly is in contravention of Section 28, Article II of the Ohio Constitution. I would apply this analysis to *all* the provisions of R.C. 4121.80.

The majority opinion purports to explain *Blankenship* and *Jones.* By doing so, the majority implicitly accepts the holdings of both cases. This, for at least some of the majority, is a major change of position. In explaining *Jones,* the majority asserts that "[w]e now interpret *Jones* to require knowledge on the part of the employer as a vital element of the requisite intent." The majority then sets forth a three-part test, relying on Section 8(A) of the Restatement of Torts 2d and Section 8 of Prosser & Keeton on Torts as the basis for establishing "intent." I fail to see how this in any way changes or even explains *Jones.* Much the same language is contained throughout *Jones.* As an example, see *Jones,* at 95, 15 OBR at 250, 472 N.E. 2d at 1051, wherein the *Jones* court limited those fact situations from which "intent" may properly be inferred, and distinguished intentional torts from negligence and from wanton or reckless misconduct.

Accordingly, if we are going to ap-

ply the Restatement and *Jones* to alleged intentional torts arising out of employment, then I agree with the majority's restatement or rewording of *Jones,* subject, however, to my previous discussion that we should not be applying cases or legislation concerning the employer-employee relationship, but should be applying the principles of common-law intentional tort or, in the alternative, the principles of the Restatement as set forth in *Jones, Kunkler* and the majority opinion herein.

## V

I agree with the majority that *Jones* and some subsequent cases have created confusion in the field of alleged intentional torts occurring in the course of employment. The confusion did not result from the law regarding "substantial certainty" announced in *Jones.* In my judgment, the problems have arisen because of the misapplication of the law announced in *Jones* to the facts of the trilogy of cases decided therein. The *Jones* court should have found that the fact situation involving the presence of a high voltage electrical power line near the area where the employees were working did not rise to the level of "substantial certainty" that the employees would come in contact with and/or be injured by the power line. In my view, knowledge that injury was "substantially certain" to occur cannot be inferred from those facts.

In the second case decided in *Jones,* the removal of a safety guard by the employer presented a closer question. Reasonable minds, as in all the close cases, can differ as to whether a jury question arises. See, as an example, *Pariseau* v. *Wedge Products, Inc.* (1988), 36 Ohio St. 3d 124, 129-132, 522 N.E. 2d 511, 516-519, and the dissents of Justice Locher and myself therein. It is natural that judges and juries from differing backgrounds will disagree on close cases depending on their specific orientation. That does not, necessarily, make either position right or wrong. In a sensitive area such as this, involving issues over which reasonable persons may easily and heatedly differ, there is no reason for any of us to stake out positions which provoke animosity. In a case presenting a close factual question, this court is bound to uphold the verdict returned by the jury. Therefore, the reinstatement of the verdict by the *Jones* court was completely proper.

The third case decided in *Jones* involved the apparently deliberate misrepresentation of a toxic or hazardous substance in the workplace, which seems to me to rise to the level of "substantial certainty" or at least presents a jury question of whether injury to employees was substantially certain to occur because of the employer's actions. Therefore, the *Jones* court was correct, I believe, in reinstating the jury verdict in favor of the injured workers in that case.

If the foregoing analyses had been made in the first case, and the application of the law discussed in more depth, it is my judgment that we would not have the confusion we have today in this field of law.

## VI

I turn now to the facts in the case at bar. R.C. 2503.43 states that "[i]n a civil case or proceeding, * * * the supreme court need not determine as to the weight of the evidence." While this section and a line of cases decided by this court provide that we ordinarily do not and need not weigh evidence, there is no mandate that prohibits us from doing so — especially when the case before us and the issues to be decided are not "ordinary." The entire

question of intentional tort falls into this category and, therefore, I am in agreement with the majority in its decision to weigh the evidence. In addition, the case before us presents an especially good fact pattern to make several additional points.

With one exception, the facts, as recited in two places in the majority opinion, are complete. The additional fact I would add is that the appellee-employee was fully familiar with the steps in question and had, in fact, gone up and down the steps five or six times on the evening of his fall.

Based upon these facts it does not appear to me to even be a close case concerning whether the employer could have been "substantially certain" that the injury to appellee would occur. Whether we use the common-law intentional tort standard, the *Jones* standard or the Restatement standard unencumbered by the *Jones* facts, this case comes out the same. There was no intentional tort committed by appellant Babcock & Wilcox and the trial court was correct in granting summary judgment to this appellant. I agree with the majority in the reinstatement of the summary judgment.

But, I fear, under our judgment today, the confusion will continue. This case and many like it have been filed alleging intentional torts when there is no legal or factual basis to support such claims. Some, obviously, have been filed to prevent future claims of legal malpractice. Some have been filed in the hope that the cost of defense will bring about some settlement. Some have been filed on the theory of "what can it hurt?"

Well, it does hurt! To have a case like this reach this level entails substantial litigation costs — both to the parties and to the courts. This pattern is being followed over and over

again. There should be a definitive answer from this court to terminate this practice. I have two suggestions that I would hope a majority of this court would adopt in some future case.

I have often expressed my belief that where an employer commits acts which amount to an intentional tort against an employee and the employee is thereby injured, the law should not immunize the employer from liability solely on the basis that the employer is a contributing member of the workers' compensation system. To condone such activity under any theory of law would not be a just result.

Conversely, to place an employer in a position of having to extensively defend an "intentional tort" case which is based upon nebulous theories and speculations is likewise not a just result. The cost of defense alone is enough to seriously damage some employers. This is especially so since this court, by a split vote, has decided that employers may not insure themselves against liability for intentional torts. *Wedge Products, Inc.* v. *Hartford Equity Sales Co.* (1987), 31 Ohio St. 3d 65, 31 OBR 180, 509 N.E. 2d 74.

To aid our trial and appellate courts in granting and upholding Civ. R. 12(B)(6) and 56 motions, in proper cases, I would hold that a pleading alleging an intentional tort must contain operative facts pled with particularity, much the same as is required by Civ. R. 9(B) for fraud. In the case of intentional tort pleadings, this would require (and permit) the trial court to make a more detailed examination than is required or permitted by *O'Brien* v. *University Community Tenants Union, Inc.* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus. Those cases that fall short on facts indicating that an inten-

tional tort was committed could be dismissed without loss of further time or expense.

For those cases which survive a Civ. R. 12(B)(6) motion under this standard, I would require a heightened review on summary judgment akin to that which we require in defamation cases. In cases of libel, courts, both trial and appellate, are required to construe all the evidence under a heightened standard of review. *Grau* v. *Kleinschmidt* (1987), 31 Ohio St. 3d 84, 31 OBR 250, 509 N.E. 2d 399; *Varanese* v. *Gall* (1988), 35 Ohio St. 3d 78, 80-81, 518 N.E. 2d 1177, 1180-1181. This would tend to lend more credence to those cases where an intentional tort has, in fact, been committed and would better assure coherent appellate review.

Finally, if either or both of these proposals were adopted, I would make them prospective only.