STASIA et al., Appellants,

v.

CITY OF DUBLIN et al., Appellees.

[Cite as *Stasia v. Dublin* (1994), 93 Ohio App.3d 185.]

Court of Appeals of Ohio,
Franklin County.

No. 93APE09–1248.

Decided Feb. 15, 1994.

*Michael T. Gunner* and *Bruce V. Heine,* for appellants.

*Teaford, Rich, Coffman & Wheeler* and *Jeffrey A. Rich; Carlile, Patchen & Murphy, Stephen J. Smith* and *Mitchell H. Banchefsky,* for appellees.

TYACK, Judge.

On November 6, 1989, the Dublin City Council passed Resolution 26–89 ("Resolution I"), an ordinance creating the Tuttle Road Community Reinvestment Area. Attached to and incorporated in Resolution I was a map which set forth the boundaries of the reinvestment area, which included property owned by the plaintiffs. On May 21, 1990, the city council passed Resolution 19–90 ("Resolution II"), which amended Resolution I to comply with the requirements of R.C. 3735.67, the statute governing creation of community reinvestment areas. Resolution II specified that the tax exemption would apply to one hundred percent of the value of the property and specified an exemption period of ten years. Resolution II included a map which designated the same boundaries as Resolution I. Beginning in September 1992, the plaintiffs filed applications for exemption from property taxes for their residential properties located within the boundaries of the community reinvestment area.

The city council passed Resolution 45–92 ("Resolution III") on December 22, 1992. Resolution III changed the boundaries of the reinvestment area to exclude all but two lots of the Llewellyn Farms Subdivision, the area where the plaintiffs' homes were located. The reason set forth in Resolution III for the amendment was that the original boundaries were drawn in error and, essentially, that the tax exemption was not intended to benefit a "new high-income residential development" such as the plaintiffs'. Resolution III also purported to deny plaintiffs' applications for exemption. The two lots in the subdivision which

retained the exemption did so because their exemption applications had previously been processed and approved.

On December 31, 1992, the plaintiffs, eight couples owning property in the Llewellyn Farms Subdivision, filed a complaint in the Franklin County Court of Common Pleas, naming the city of Dublin as a defendant. The plaintiffs sought declaratory and injunctive relief to determine their entitlement to the tax exemption.

The parties filed a stipulation of facts and submitted briefs to the trial court. On July 20, 1993, the trial court rendered a decision in which it held that the plaintiffs were not entitled to the tax exemption and that the city of Dublin acted properly and lawfully in denying the applications and in adopting Resolution III. The plaintiffs (hereinafter "appellants") have timely appealed, assigning seven errors for our consideration:

"1. The trial court erred as a matter of law in applying the presumption in favor of taxation to the facts of this case.

"2. The trial court erred as a matter of law in finding both Resolution 1 and Resolution 3 valid.

"3. The trial court erred as a matter of law by applying the wrong standard to determine whether a substantive right was infringed in violation of Article II, Section 28 of the Ohio Constitution.

"4. The trial court erred as a matter of law by not applying relevant presumptions and rules of law to the facts of this case.

"5. The trial court erred as [a] matter of law in finding that the city had satisfied the duties created by the Ohio Revised Code.

"6. The trial court erred as a matter of law in finding that Section 5 of Resolution 3 was valid.

"7. The trial court erred as a matter of law in finding that the city of Dublin should not be estopped due to reliance."

R.C. 3735.65(B) defines "community reinvestment area" as follows:

" 'Community reinvestment area' means an area within a municipal corporation * * * for which the legislative authority of the municipal corporation * * * has adopted a resolution under section 3735.66 of the Revised Code describing the boundaries of the area and containing a statement of finding that the area included in the description is one in which housing facilities or structures of historical significance are located and new housing construction and repair of existing facilities or structures are discouraged."

R.C. 3735.66 provides, in pertinent part:

"The legislative authorities of municipal corporations and counties may survey the housing within their jurisdictions and, after the survey, may adopt resolutions describing the boundaries of community reinvestment areas which contain the conditions required for the finding under division (B) of section 3735.65 of the Revised Code.

" * * *

"Each legislative authority adopting a resolution pursuant to this section shall designate a housing officer."

The "housing officer" required by R.C. 3735.66 is defined in R.C. 3735.65(A) as "an officer or agency of a municipal corporation * * * designated by the legislative authority of the municipal corporation * * * for each community reinvestment area to administer [R.C.] 3735.65 to 3735.69 * * *."

R.C. 3735.67 generally describes the application process and the housing officer's duties as follows:

"(A) The owner of any real property in a community reinvestment area may file an application for an exemption from real property taxation for a new structure or remodeling, completed after the effective date of the resolution adopted pursuant to section 3735.66 of the Revised Code, with the housing officer designated pursuant to section 3735.66 of the Revised Code, for the community reinvestment area in which the property is located.

"(B) The housing officer shall verify the construction of the new structure or the cost of the remodeling and the facts asserted in the application. The housing officer shall determine whether the construction or the cost of the remodeling meets the requirements for an exemption under division (D)(1), (2), or (3) of this section. * * *

"(C) If the construction or remodeling meets the requirements for exemption, and after complying with section 5709.83 of the Revised Code, the housing officer shall forward the application to the county auditor with a certification as to the division of this section under which the exemption is granted and the period of the exemption as determined by the legislative authority pursuant to that division.

"(D) The tax exemption shall first apply in the year following the calendar year in which the certification is made to the county auditor by the housing officer pursuant to this section. * * *

"The construction of new structures and the remodeling of existing structures are hereby declared to be a public purpose for which exemptions from real property taxation may be granted for the following periods:

" * * *

"(3) For construction of every dwelling * * * located within the same community reinvestment area, a period to be determined by the legislative authority adopting the resolution, pursuant to section 3735.66 of the Revised Code, describing the community reinvestment area where the dwelling or structure is located, but not exceeding fifteen years."

Preliminarily, we note that the parties stipulated that appellants' applications were properly filed in compliance with the statute prior to the introduction and effective date of Resolution III. Further, the parties agree that appellants' property would have qualified for the tax exemption prior to the enactment of Resolution III, which excluded their property from the community reinvestment area. Finally, the parties also agree that the city was knowingly without a designated housing officer for a period of approximately five months during the latter half of 1992, up to the date of the enactment of Resolution III.

In their second, third, and sixth assignments of error, appellants argue, in essence, that the trial court erred in finding that Resolution III was valid. Appellants argue that Resolution III violated the prohibition against retroactive laws set forth in Section 28, Article II of the Ohio Constitution. Section 28 reads:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors in instruments and proceedings, arising out of their want of conformity with the laws of this state."

Appellants assert that they acquired a vested or substantive right to the tax exemption upon properly filing their applications. They emphasize the repeated use of the mandatory "shall" language in R.C. 3735.67 setting forth the duties of the housing officer in processing such applications, and maintain that the city had no discretion to deny applications submitted by qualified applicants. Since Resolution III divested them of the right to the tax exemption provided by Resolutions I and II, appellants argue that Resolution III is invalid as violative of the Retroactivity Clause. We agree.

In *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154, at paragraph one of the syllabus, the Supreme Court of Ohio held that "Section 28, Article II of the Ohio Constitution prohibits the legislature from retroactively applying laws that affect substantive rights. * * *" In *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, the Supreme Court of Ohio described a "substantive" statute as one which "does any of the following":

"[I]mpairs or takes away vested rights * * *; affects an accrued substantive right * * *; imposes new or additional burdens, duties, obligations or liabilities

as to a past transaction * * *; creates a new right out of an act which gave no right and imposed no obligation when it occurred * * *; creates a new right * * *; [or] gives rise to or takes away the right to sue or defend actions at law * * *." (Citations omitted.) *Id.* at 107, 522 N.E.2d at 496.

The trial court acknowledged that the "granting of a tax exemption is substantive in nature." However, it reasoned that Resolution III "was not given retroactive application" because appellants' applications for exemption had not been "finalized" at the time Resolution III was passed. We agree with appellants' position that had the city fulfilled its statutory obligation to appoint a housing officer within a reasonable time, appellants' applications would have been "finalized" prior to the passage of Resolution III. Instead, the city left the position vacant for some five months during which time period appellants' applications were left pending. Again, the city does not dispute the fact that appellants had the right to the exemption pursuant to the first two resolutions.

In *Gibson v. Oberlin* (1960), 171 Ohio St. 1, 12 O.O.2d 1, 167 N.E.2d 651, at paragraphs one and two of the syllabus, the Supreme Court of Ohio held:

"1. Where a property owner complies with all the legislative requirements for the procurement of a building permit and his proposed structure falls within the use classification of the area in which he proposes to build it, he has a right to such permit, and there is a duty on the part of the officer charged therewith to issue it.

"2. In the enactment of a zoning ordinance, a municipal council may not give retroactive effect to such ordinance so that a property owner is deprived of his right to a building permit in accordance with a zoning ordinance in effect at the time of the application for such permit."

We find these principles related to the retroactivity of zoning laws applicable to the tax exemption ordinance at issue here. In *Gibson,* the court explained that "[t]he ability to establish a nonconforming use constitutes a valuable right and one which cannot be abrogated by the simple expedient of withholding a building permit." *Id.* at 3, 12 O.O.2d at 2, 167 N.E.2d at 652. Similarly, we believe that the ability to establish a tax exemption is a "valuable right" and appellants should not have been denied that right because of the city's failure to appoint a housing officer within a reasonable time. The *Gibson* court concluded that "[i]f an applicant for a building permit qualifies for it under law existing at the time of application, such permit must be issued * * * and no subsequent action of the city council can defeat such right * * *." *Id.* at 3–4, 12 O.O.2d at 2, 167 N.E.2d at 652–653. We hold that appellants' rights to the tax exemptions became fixed as of the time they filed their applications and, accordingly, that city council could

not retroactively take away that to which they were entitled under the law existing at that time.

Our holding is heavily dependent upon the fact that the housing officer who should have been appointed pursuant to R.C. 3735.66 had little or no discretion in administering the applicable statutes. The housing officer essentially verifies the fact that a certain sum of money was spent on a structure within the community reinvestment area. Once the sum and location have been verified, the exemption must be granted.

We are concerned that were we to adopt the position espoused on behalf of the city of Dublin (that the right to the exemption becomes vested only when the taxes are assessed), we would be allowing taxing entities to enact tax breaks which are purely illusory. Investment could be sought in an area needing investment based upon promises that substantial tax breaks had been legislatively authorized, only to remove the tax incentives once the investment has occurred.

Needless to say, the problem presented here would have been avoided if the resolutions enacted by city council had been properly written in the first place. Also, this litigation would have been avoided if the housing officer required by statute had been appointed, since presumably all the homeowners who applied for the exemption would have received the exemption long before the third resolution was passed.

Finally, we are unaware of legal authority for a legislative body of a city merely to refuse to designate a housing officer to perform duties mandated by statute and then make the decision for a housing officer it has failed to appoint. The statute instead mandates the appointment of the housing officer who must make the required determination.

The second, third, and sixth assignments of error are sustained to the extent they assert that Resolution III violated the Retroactivity Clause of the Ohio Constitution. Our disposition of the second, third and sixth assignments of error renders the first, fourth, fifth and seventh assignments of error moot. See App.R. 12.

Having sustained the second, third and sixth assignments of error, the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded to that court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WHITESIDE, P.J., and BOWMAN, J., concur.