OPINION
Angela M. Carr, now known as Angela M. Leive ("Carr"), appeals from a judgment of the Montgomery County Court of Common Pleas which granted summary judgment in favor of Central Printing Co. ("Central Printing") and Cencor Temporary Services, Inc. ("Cencor").
The facts and procedural history are as follows.
In the summer of 1994, Carr was employed through Cencor, a temporary employment agency, and had been assigned to work at Central Printing. On July 13, 1994, Carr was injured when her hair became entangled in a printing press, causing neck, head, and scalp injuries. It is undisputed that Carr received workers' compensation benefits for her injuries, but she subsequently sued Cencor and Central Printing for negligence and intentional tort. Cencor and Central Printing each filed motions for summary judgment, and the trial court granted these motions on July 26 and July 29, 1996, respectively. The trial court found that there had been no genuine issue of material fact as to the intentional tort claims and that Cencor and Central Printing were immune from liability for negligence pursuant to the workers' compensation laws, specifically R.C.4123.74. The trial court also rejected Carr's claims that, as a frequenter of the Central Printing premises, she was entitled to sue for negligence pursuant to R.C. 4101.11 and 4101.12.
Carr appealed from the trial court's decisions. In Carr v. CentralPrinting Co. (June 13, 1997), Montgomery App. No. 16091, unreported ("Carr I"), we affirmed the trial court's judgments insofar as they held that there had been no genuine issue of material fact regarding Carr's intentional tort claims. On the negligence claims, however, we reversed the trial court's judgments. We held that the trial court had erred in granting summary judgment to Central Printing on these issues because there had been a genuine issue of material fact as to who had paid the workers' compensation premiums such that summary judgment on the immunity issue had been premature. In particular, we held that it was not clear whether Central Printing had satisfied the definition of an employer set forth at R.C. 4123.01(B)(2) because it was unclear whether Central Printing had been the "real source" of premiums paid into the workers' compensation fund. We also held that a genuine issue of material fact existed as to Carr's claim that she was a frequenter of Central Printing's premises, a determination which turned on whether Central Printing could properly be classified as her employer. Accordingly, we remanded the matter to the trial court.
Following our remand, Central Printing served requests for admissions on Cencor and Carr. Neither party responded or objected to the requests and, pursuant to Civ.R. 36(A), the trial court deemed the following matters to have been admitted:
 1. Central Printing Co. paid to Cencor compensation for each employee sent by Cencor over and above that employee's salary.
 2. That part of the amount paid by Central Printing Co. over and above the salary of each employee sent by Cencor was designated for payment of premiums to the Worker's Compensation Fund.
 3. That Cencor paid the premiums to the Worker's Compensation Fund for each employee sent to Central Printing Co., thereby making Central Printing Co. the real source of premiums paid into the Worker's Compensation fund.
On January 10, 2000, Central Printing filed a second motion for summary judgment.
Based on the admissions of Cencor and Carr, the trial court again granted summary judgment in favor of Central Printing. The trial court concluded that there was no genuine issue of material fact as to whether Central Printing had been the "real source" of the premiums paid into the workers' compensation fund and that it was, therefore, immune from liability pursuant to R.C.4123.74. The trial court also concluded that Carr could not have been a frequenter of Central Printing's premises, as she alleged, because the statutory definition of a frequenter excluded an employee. See former R.C. 4101.01(E).
Carr raises two assignments of error on appeal.
 I. THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT REGARDING CENTRAL PRINTING'S ASSERTION THAT IT WAS A COMPLYING EMPLOYER ENTITLED TO IMMUNITY UNDER OHIO WORKERS' COMPENSATION ACT FROM PLAINTIFF-APPELLANT'S NEGLIGENCE CLAIMS.
 Carr contends that the trial court erred in granting summary judgment because, even if the unanswered requests for admissions were properly deemed to have been admitted, the admissions did not establish the existence of a written agreement between Central Printing and Cencor requiring the payment of workers' compensation premiums. Such an agreement seems to be required by R.C. 4123.01(B)(2). Carr also claims that a genuine issue of material fact still existed as to the nature of the agreement between Central Printing and Cencor. In the alternative, Carr argues that the requested admissions should not have been deemed admitted because they were not directed to either party as required by Civ.R. 36 and because the information sought through the admissions was known only to Central Printing. In her reply brief, Carr also argues that Cencor had been implicitly dismissed from the case by the time the requests for admissions were served so that it had therefore been under no obligation to respond. For these reasons, Carr asserts that the requests should not have been deemed admitted.
We will begin by considering whether the trial court erred in treating the requests for admissions to which Carr and Cencor had failed to respond as having been admitted. Civ.R. 36(A) expressly provides that the matter of a request for admission "is admitted unless * * * the party upon whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter." It is undisputed that, in addition to not answering the requests for admissions, Carr did not avail herself of the opportunity to object to the requested admissions. The claims she raises now could have been properly raised in an objection, but were not. Moreover, the issues raised by Carr lack merit. Carr's claim that the requests were not properly directed to either party is not supported by the express language of the rule. Carr also claims that the requested information was known only to Central Printing, but Cencor certainly had knowledge of its arrangement with Central Printing even if Carr did not. Carr's contention that Cencor had been "implicitly dismissed" from the case before the requests had been served is inaccurate. Although our prior holding had significantly weakened Carr's claim against Cencor, we expressly held that her second and third causes of action had not been ripe for summary disposition and remanded on those issues. Her second cause of action included Cencor. Therefore, our decision did not "implicitly dismiss" Cencor from the case. Furthermore, the trial court's entries continued to list Cencor as a party on remand, and no one filed a motion to dismiss Cencor from the case. Thus, Carr's argument that the requests for admissions were improperly served upon Cencor because it had been dismissed from the action are without merit. The trial court acted within its discretion in treating the requests as if they had been admitted.
Carr also claims that a genuine issue of material fact existed as to the nature of the agreement between Central Printing and Cencor even if the requests for admissions were properly admitted. Carr asserts that "Central Printing at best has established a conflict in the facts based on the deposition testimony of Connie Stathes," a Central Printing employee, and the admissions pertaining to payment of the workers' compensation premiums. Stathes testified that it was her understanding that Central Printing did not pay the premiums for workers' compensation for temporary employees directly, that the temporary employees received less than the hourly rate paid to Cencor by Central Printing in order to cover workers' compensation, and that she did not know "for certain that Cencor [had paid] the Workers' Comp payments of the employees that it lease[d] to Central Printing." We concluded in Carr I that Stathes' testimony could have supported the conclusion that Central Printing had paid the premiums (through Cencor) or that the employees had paid the premiums themselves, leaving an unresolved issue of fact.
In light of Cencor's subsequent admission that it had received money from Central Printing to pay workers' compensation premiums for the employees leased to Central Printing, we cannot agree with Carr's argument that a genuine issue of material fact remained when the admission was compared to Stathes' testimony. Stathes did not assert that Central Printing had not paid the workers' compensation premiums to Cencor on behalf of its employees; to the contrary, it was obviously her understanding that Central Printing had paid for the premiums through Cencor. She could not, however, vouch for the fact that Cencor had indeed made such payments. This testimony does not conflict with Cencor's admission. Moreover, as an employee of Central Printing, it is not apparent that Stathes would have had any first hand knowledge of Cencor's actions; her lack of knowledge about Cencor's actions did not create a genuine issue of material fact as to those actions.
The remaining issue, then, is whether the absence of a written contract to pay the workers' compensation premiums removes Central Printing from the definition of an "employer" set forth at R.C. 4123.01(B)(2):
(B) "Employer" means:
* * *
 (2) Every person, firm, and private corporation * * * that (a) has in service one or more employees regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, or (b) is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by this chapter.
 In Carr I, we concluded that a genuine issue remained as to whether Central Printing was an employer for workers' compensation purposes because the evidence did not clearly show that Central Printing had paid or had reimbursed Cencor for the actual cost of premiums paid on behalf of Carr. In a concurring opinion, Judge Grady observed that R.C. 4123.01(B)(2) seemed to require not only that Central Printing had been the actual source of the funds used to pay the workers' compensation premiums, but that it had been required by a written contract to do so as well.
It is now apparent that Central Printing did pay the actual costs of the premiums for workers' compensation on behalf of Carr, but that it had not been obligated by a written contract to do so. Thus, we must determine whether Central Printing should be immune from liability pursuant to Ohio's workers' compensation laws despite its inability to completely satisfy the definition of an employer pursuant to R.C.4123.01(B)(2).
In Daniels v. MacGregor Co. (1965), 2 Ohio St.2d 89, the supreme court specifically addressed the status of a temporary employee such as Carr in relation to the employment agency, the agency's customer in whose workplace the employee performs his duties, and the workers' compensation scheme. Daniels held that an employee of an employment agency is the employee of the employment agency's customer for workers' compensation purposes where the customer has "the right to control the manner or means of performing the work" and the customer "has complied with the provisions of the Workmen's Compensation Act." Id., at syllabus.
Other supreme court cases which have addressed this issue have also emphasized the nature of the temporary employee's relationship to the employer, rather than the formalities of the relationship between the employment agency and the employer, in determining whether the employer was entitled to immunity pursuant to R.C. 4123.74. For example, in Foranv. Fisher Foods, Inc. (1985), 17 Ohio St.3d 193, an employment agency provided licensed truck drivers, including Gerald E. Foran, to Fisher Foods. The agency carried workers' compensation insurance, and Fisher Foods was required to reimburse the agency for the actual cost of workers' compensation premiums paid on behalf of the drivers assigned to it. It is unclear whether this agreement was in writing. When Foran was injured, he applied for workers' compensation naming the agency as his employer and was awarded benefits. Foran subsequently filed a negligence action against Fisher Foods claiming that it had maintained its dock in an unsafe condition. The supreme court held that Fisher Foods was immune from liability by virtue of the fact that it had exercised day-to-day control over the employee and had therefore satisfied the definition of an employer as set forth in Daniels, 2 Ohio St.2d at syllabus. Id. at 194.
In Campbell v. Central Terminal Warehouse (1978), 56 Ohio St.2d 173, Campbell had been assigned by a temporary employment agency to work at Central, where he was injured. After receiving workers' compensation, Campbell brought a negligence claim against Central. Central asserted that it was immune from liability because it was in compliance with R.C.4123.35 and Campbell had been its employee pursuant to R.C. 4123.01. The employment agency had handled all payroll matters, including contributions to the workers' compensation fund. Again, how much of the agreement between Central and the employment agency was in writing was unclear. Following Daniels, 2 Ohio St.2d 89, the court refused to hold that Campbell was an employee only of the employment agency when the manner and means of his work had been controlled by Central, and it found that Central was immune from liability. Campbell, 56 Ohio St.2d at 175.
In State ex rel. Stanadyne v. Industrial Comm. (1984), 12 Ohio St.3d 199, a trucking company that had used an employment agency to obtain qualified truck drivers objected to the Industrial Commission's conclusion that it had been the employer of one of these drivers for purposes of workers' compensation. In support of its position, the trucking company argued that the employment agency had hired the drivers, had paid their wages and had withheld taxes, had reserved the right to fire the drivers, and had been responsible for negotiating with the drivers' union. The supreme court characterized this argument as "an attempt to place form over substance" and concluded that "the customer of the employment agency, exercising day-to-day control over the employee, will be considered to be the employer for purposes of workers' compensation." Id. at 202.
We have frequently recognized that Ohio's workers' compensation laws represent public policy trade-offs. Adams v. K-Mart Corp. (Feb. 5, 1999), Greene App. No. 98CA75, unreported, citing Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 110; Spates v. Richard E. Jones Assoc. (July 12, 1995), Montgomery App. No. 15057, unreported. Employees obtain a certain and speedy recovery for their workplace injuries, in exchange for which they sacrifice their rights to bring common law actions against employers and fellow employees; employers are required to contribute to the workers' compensation fund, in exchange for which their liability for any injury to an employee is limited. Van Fossen,36 Ohio St.3d at 110. We are confronted here with a situation in which one of the parties to this arrangement will receive more than the "bargain" envisioned by the framers of the workers' compensation system. If we conclude that Central Printing is not an employer for purposes of workers' compensation and therefore is not immune from liability, Carr will be able to sue for her injuries despite her "certain and speedy recovery" through the workers' compensation program. On the other hand, if we conclude that Central Printing is entitled to immunity, we will be giving it the full benefit of immunity through the workers' compensation program even though it made its premium payments in a way that did not fully comply with the requirements of the law.
The supreme court cases discussed above seem to indicate that, in the supreme court's view, the immunity determination turns on the nature of the relationship between the employment agency's customer and the employee-i.e., whether the customer controls the manner and means of the employee's work-rather than on the form of the agreement between the customer and the agency. Thus, these cases lead us to conclude that Central Printing should be treated as Carr's employer for workers' compensation purposes and should be immune from liability notwithstanding its apparent failure to put into writing its obligation to pay workers' compensation premiums on behalf of Carr. We also think that this result is more in keeping with the spirit of the workers' compensation scheme. To allow Carr to sue for negligence in addition to recovering through workers' compensation is a result that clearly was not intended by the workers' compensation laws.
For the foregoing reasons, the first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER PLAINTIFF-APPELLANT WAS AN EMPLOYEE OF CENTRAL PRINTING FOR THE PURPOSE OF PLAINTIFF-APPELLANT'S CLAIMS UNDER R.C. 4101.11 AND R.C. 4101.12.
 Carr claims that she was entitled to pursue a cause of action against Central Printing pursuant to R.C. 4101.11
and 4101.12 because she was a frequenter of the premises rather than an employee.
R.C. 4101.11 provides that every employer "shall furnish a place of employment which shall be safe for the employees therein and frequenters thereof" and shall take measures "reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." R.C. 4101.12 provides that no employer shall fail to use all reasonable measures necessary "to protect the life, health, safety, and welfare" of employees and frequenters. At the time of Carr's accident, R.C. 4101.01(E) defined a frequenter as "every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than an trespasser." As we have already discussed, Carr was properly treated as an employee of Central Printing. Thus, she was not entitled to recover as a frequenter of the premises.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J., concurs.